IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ADAM Y.,[1]

Plaintiff,

v. Case No. 2:26-cv-00262-SMD-LF

FRANK J. BISIGNANO,[2]
Commissioner of Social Security,

Defendant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER comes before the Court on plaintiff's Opening Brief (Doc. 7) seeking remand, which was fully briefed on September 11, 2026. *See* Docs. 13, 18. United States District Judge Sarah Davenport referred this case to me "to perform any legal analysis required to recommend to the Court an ultimate disposition of the case." Doc. 19. Having read the parties' submissions and being fully advised in the premises, I recommend that the Court grant plaintiff's motion to remand (Doc. 7) for the reasons discussed below.

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.

[2] On May 6, 2025, Frank Bisgiano was sworn in as Commissioner of Social Security. Consequently, Mr. Bisgiano has been "automatically substituted as a party." FED. R. CIV. P. 25(d). Because "[l]ater proceedings should be in [his] name," the Court has changed the caption of this case. *Id.*; *see also* 42 U.S.C. § 405(g) (stating that such an action "survive[s] notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office").

## I. Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[3] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted). The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from

[3] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981, 416.1481, as it is in this case.

being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II. Applicable Law and Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity;" (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[4] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

---

[4] 20 C.F.R. pt. 404, subpt. P, app. 1.

## III. Background and Procedural History

Plaintiff was born in 1985. AR 42.[5] He did not graduate from high school, but "was within six months" of doing so. AR 47. He lives with his wife and children in a house in a small town in New Mexico. AR 48, 303 (showing mailing address in Tyrone, NM). He has no past relevant work. AR 28. Plaintiff filed an application for Disability Insurance Benefits ("DIB") and Social Security Income ("SSI") benefits on December 21, 2022, alleging disability since January 7, 2017, due to nerve damage, neuropathy, chronic pain, two slipped discs, post-traumatic stress disorder ("PTSD"), mild seizures, early onset Alzheimer's disease, memory problems, anxiety, and depression. AR 17, 92, 106. The Social Security Administration ("SSA") denied his claim initially and on reconsideration. AR 139, 143, 158, 162. Plaintiff requested a hearing before an ALJ. AR 166. On February 21, 2025, ALJ Matthew Allen held a hearing. AR 40. ALJ Allen issued his unfavorable decision on April 16, 2025. AR 30.

The ALJ found that plaintiff met the insured status requirements of the Social Security Act through March 31, 2024. AR 19. At step one, the ALJ found that plaintiff had not engaged in substantial, gainful activity since January 7, 2017, his alleged onset date. *Id.* At step two, the ALJ found that plaintiff's degenerative disc disease of the lumbar spine, chronic pain syndrome, PTSD, panic disorder, and adjustment disorder were severe impairments. *Id.* At step three, the ALJ found that none of plaintiff's impairments, alone or in combination, met or medically equaled a Listing. AR 20. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed plaintiff's RFC. AR 22. The ALJ found plaintiff had the RFC to perform

> light work . . . except the claimant can perform occasional climbing of ramps/stairs (but no climbing of ladders, ropes, or scaffolds). He can perform

[5] Document 6 is the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

> occasional balancing, stooping, kneeling, crouching, and crawling. He can understand, remember and carry out simple instructions. He can use judgment to make simple work-related decisions. He can have occasional interaction with supervisors, coworkers, and the public. He can deal with occasional routine changes in the work setting.

*Id*.

At step four, the ALJ concluded that plaintiff had no past relevant work. AR 28. At step five, the ALJ fund that plaintiff was able to perform work that existed in sufficient numbers in the national economy, including as a small products assembler, hand packager, or merchandise marker. AR 29. The ALJ thus found plaintiff not disabled at step five. AR 35.

## IV. Discussion

Plaintiff's sole argument is that the ALJ erred in analyzing the opinion of non-examining state agency psychiatrist Jill Blacharsh. Doc. 7 at 6–7. Specifically, plaintiff argues that the ALJ did not account for several moderate limitations found in Dr. Blacharsh's opinion that could affect plaintiff's ability to work in any capacity. *See id.* at 6–12. The Commissioner argues that the ALJ adequately accounted for plaintiff's mental limitations in the RFC. *See* Doc. 13 at 6–12. For the following reasons, I agree with plaintiff that the ALJ erred.

### A. Dr. Blacharsh's Opinion and the ALJ's Analysis

On reconsideration, Dr. Blacharsh identified various severe mental impairments: trauma and stressor-related disorders, personality disorders, and neurocognitive disorders. AR 114. Based on these impairments, Dr. Blacharsh assessed plaintiff's mental residual functional capacity ("MRFC"). AR 120. She first filled out what some cases refer to as the "worksheet section" of the MRFC analysis, identifying what some plaintiffs call "checkbox" limitations. *See Romero v. Kijakazi*, No. 1:21-cv-00249-KK, 2022 WL 1553295, at *10 (D.N.M. May 17, 2022); *see also Lucero v. Bisignano*, No. 1:25-cv-00283-JFR, 2026 WL 114827, at *6 (D.N.M. Jan. 15,

2026). I refer to these checkbox or worksheet limitations as "Section I findings." *Vienna v. Saul*, 2019 WL 4686718, at *4 n.8 (D.N.M. Sept. 26, 2019). In Section I, Dr. Blacharsh found a variety of moderate mental limitations, including "[t]he ability to understand and remember detailed instructions," "[t]he ability to carry out detailed instructions," "[t]he ability to maintain attention and concentration for extended periods," "[t]he ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances," "[t]he ability to sustain an ordinary routine without special supervision," "[t]he ability to work in coordination with or in proximity to others without being distracted by them," and "the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." AR 121. She also found moderate social interaction limitations in the plaintiff's "ability to interact appropriately with the general public," "ability to accept instructions and respond appropriately to criticism from supervisors," and "ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes," as well as moderate adaptation limitations in "[t]he ability to respond appropriately to changes in the work setting" and "[t]he ability to set realistic goals or make plans independently of others." AR 121–22.

Following the worksheet portion, Dr. Blacharsh was instructed to explain the checkbox limitations in narrative form. AR 120 ("The [checkbox] questions below help determine the individual's ability to perform sustained work activities. However, the actual mental residual functional capacity assessment is recorded in the narrative discussions . . . ."). I refer to Dr. Blacharsh's narrative analysis as her "Section III findings." *Vienna*, 2019 WL 4686718, at *4 n.8. Dr. Blacharsh did not incorporate all the moderate limitations she identified in Section I into her Section III narrative. Rather, she wrote that "the claimant can understand, remember, and

carry out simple instructions, make simple decisions, attend and concentrate for two hours at a time, interact adequately with co-workers and supervisors, and respond appropriately to changes in a routine work setting." AR 122. She recommended a "workplace with well-defined expectations and limited interpersonal interaction." *Id.* Other limitations identified in Section I, such as the ability to sustain an ordinary routine without special supervision and the ability to set realistic goals or make plans independently of others, are not discussed in the narrative portion. *See id.*

The ALJ discussed Dr. Blacharsh's opinion (which took place at the reconsideration level) alongside the state agency consultant's opinion at the initial level. AR 26. He stated, "These opinions are partially persuasive, however, the undersigned finds that the limits in interaction are vague and has thus included more specific vocationally relevant RFC limitations." *Id.* He "otherwise" found the opinions "generally consistent with other evidence" and listed various examples of that consistency. *Id.* at 26–27.

Plaintiff argues that "[o]ther than providing 'more specific' interaction limitations, the ALJ offered no reason for departing from the opinion," yet the ALJ "failed to incorporate the numerous moderate checkbox limitations that were not elaborated upon in Dr. Blacharsh's narrative opinion and that the ALJ did not outright reject." Doc. 7 at 7–8. The Commissioner responds that there was no need for the ALJ to recite Dr. Blacharsh's "moderate limitations verbatim," Doc. 13 at 7, and that "a moderate limitation does not indicate that a claimant cannot work" or is disabled, *id.* at 8–9. The Commissioner further states that "the ALJ's RFC accounted for any limitations in concentration by limiting Plaintiff to simple unskilled work." *Id.* at 10. Plaintiff concludes that the checkbox limitations "were not fully accounted for by Dr.

Blacharsh's additional narrative explanation" and that he and the Commissioner "disagree over whether an ALJ can disregard checkbox limitations." Doc. 18 at 1.

**B. Th ALJ Erred in his Consideration of Dr. Blacharsh's Opinion.**

"An ALJ is required to consider and discuss both Section I and Section III findings." *Vienna*, 2019 WL 4686718, at *4. If the narrative does not encapsulate the checkbox limitations, the ALJ still must consider the checkbox limitations separately; he should not simply "turn a blind eye to any moderate limitations enumerated in Section I that are not adequately explained in Section III." *Lee v. Colvin*, 631 F. App'x 538, 541 (10th Cir. 2015). Further, an ALJ "has a duty to explain why he adopt[s] some [of an opinion's] limitations while rejecting others." *Vienna*, 2019 WL 4686718, at *4 (citing *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) and *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007)). With this legal background in mind, I turn to the medical details.

In Section I, Dr. Blacharsh identified moderate limitations to plaintiff's ability to "understand and remember detailed instructions" as well as "to carry out detailed instructions." AR 121. The ALJ addressed these by stating that plaintiff could "understand, remember, and carry out simple instructions." AR 22. These limitations therefore are incorporated into plaintiff's RFC.

In Section I, Dr. Blacharsh identified moderate limitations to plaintiff's abilities to "work in coordination with or in proximity to others without being distracted by them," "interact appropriately with the general public," "accept instructions and respond appropriately to criticism from supervisors," and "get along with coworkers or peers without distracting them or exhibiting behavioral extremes." AR 121. The ALJ addressed these by stating that plaintiff "can

have occasional interaction with supervisors, coworkers, and the public." AR 22. These limitations therefore are incorporated into plaintiff's RFC.

In Section I, Dr. Blacharsh identified a moderate limitation to plaintiff's ability to "respond appropriately to changes in the work setting." AR 121. The ALJ addressed this limitation by stating that plaintiff could "deal with occasional routine changes in the work setting." AR 22. This limitation therefore is incorporated into plaintiff's RFC.

In Section I, Dr. Blacharsh identified moderate limitations to plaintiff's abilities to "maintain attention and concentration for extended periods," "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances," "sustain an ordinary routine without special supervision," "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods," and "set realistic goals or make plans independently of others." AR 121. The ALJ did not address these limitations, nor did he incorporate them into plaintiff's RFC. *See* AR 22. I recommend that the Court find that this was error; as discussed above, the ALJ is required to explain why he adopts some of an opinion's limitations but not others. *See Vienna*, 2019 WL 4686718, at *4.

Nor are the Commissioner's arguments to the contrary persuasive. As an initial matter, the mere fact that the ALJ found Dr. Blacharsh's opinion "partially persuasive" does not operate as a blank check to justify disregarding portions of that opinion; the ALJ still must explain which portions of the opinion he rejects and why. *See Haga*, 482 F.3d at 1208 (ALJ "should have explained why he rejected four of the moderate restrictions . . . while appearing to adopt the others" because ALJ "did not state that any evidence conflicted" with relevant medical opinion, justifying remand so ALJ could explain).

The Commissioner also cites to binding Tenth Circuit case law which permits an ALJ to "account for moderate limitations by limiting the claimant to particular kinds of work activity," even if the ALJ does not "repeat the moderate limitations" verbatim. *Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016); Doc. 13 at 9. For example, at least in some instances, an ALJ may account for "moderate concentration, persistence, and pace problems" through a limitation to unskilled work, although in other cases this restriction may not "adequately address a claimant's mental limitations." *Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015). Here, I recommend that the Court find that the ALJ's assessment of plaintiff's RFC has not accounted for several of his moderate limitations. The RFC limits plaintiff to understanding, remembering, and carrying out "simple" instructions and making "simple work-related decisions," but these restrictions do not account for plaintiff's limitations in sustaining an ordinary routine without special supervision, meeting attendance and punctuality requirements, or completing a normal workday and workweek without interruptions from psychological symptoms. *See Vienna*, 2019 WL 4686718, at *7 (finding that restrictions to simple or unskilled work do not account for moderate attendance, punctuality, and normal workday and workweek limitations because even unskilled or simple work requires these abilities (citing POMS DI 25020.010(B)(3)(e), (i))). All work—including "light" and "unskilled" work—requires that individuals comply with attendance, punctuality, and normal workday and workweek requirements. *See id.* I therefore am not persuaded that the limitation to "light work" can account for issues of this nature. *See Vigil*, 805 F.3d at 1204 (a limitation to unskilled work may not always adequately address a claimant's mental limitations).

Finally, the Commissioner argues that persuasive Tenth Circuit authority also permits an ALJ to "account[] for" Section I limitations "by relying on [the doctor's] narrative explanation

for those limitations" when they align. *Fannin v. Commissioner, SSA*, 857 F. App'x 445, 448 (10th Cir. 2021); *see also Romero*, 2022 WL 1553295 at *10 (construing *Fannin* to allow an ALJ to rely on the narrative portion of the agency consultant's opinion when it is "consistent with the limitations found on the worksheet portion"). But here, Dr. Blacharsh's Section III narrative does not address several of these limitations (including punctuality, regular attendance, sustaining an ordinary routine, and completing a normal workday and workweek without interruption), nor does the ALJ, so *Fannin* is not on point.

## V. Conclusion

I recommend that the Court find that the ALJ erred by failing to explain why he rejected Dr. Blacharsh's findings that plaintiff had moderate limitations to his abilities to "maintain attention and concentration for extended periods," "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances," "sustain an ordinary routine without special supervision," "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods," and "set realistic goals or make plans independently of others." AR 121. I recommend that the Court GRANT plaintiff's motion to remand (Doc. 7) so that the ALJ can reconsider these findings and, if he rejects them again, explain why.

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). Written objections must be both timely and specific. *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. Failure to file timely and specific objections will result in waiver of *de novo* review by a district or appellate court. *Id.* In other words, if no objections are filed, no appellate review will be allowed.**

LAURA FASHING
UNITED STATES MAGISTRATE JUDGE